JS - 6

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 10-5088 PSG (SHx) | Date | September 27, 2010 |
|---|---|---|---|
| Title | Democracy Council of California v. WRN Limited, PLC, *et al*. | | |

| Present: | The Honorable Philip S. Gutierrez, United States District Judge | | |
|---|---|---|---|
| Wendy K. Hernandez | | Not Present | n/a |
| Deputy Clerk | | Court Reporter | Tape No. |

Attorneys Present for Plaintiff(s):   Attorneys Present for Defendant(s):

Not Present   Not Present

**Proceedings:**   **(In Chambers) Order GRANTING Defendant's Motion to Dismiss for Improper Venue**

Pending before the Court is the Defendant's Motion to Dismiss for Improper Venue pursuant to Federal Rule of Civil Procedure 12(b)(3). The Court finds the matter appropriate for decision without oral argument. *See* Fed. R. Civ. P. 78; L.R. 7-15. After considering the moving and opposing papers, the Court GRANTS the motion.

I.   Background

On October 27, 2008, Plaintiff Democracy Council of California ("Plaintiff" or "DCC") entered into an agreement ("the Agreement") for the provision of satellite uplink services. *See Compl.* ¶¶ 2, 7-8. The Agreement enabled DCC to air satellite television programs supporting and promoting democracy and freedom of the press in "areas of the developing world beset by war and fundamental change . . . with a focus on the Middle East and Latin America." *Opp'n* 2:21-25. Though DCC originally began discussions about the Agreement with WRN Limited, PLC, a company incorporated in the United Kingdom ("WRN"), DCC was reluctant to do business with a company based in the United Kingdom or a Western European member of the European Union. *See Compl.* ¶ 11, *Mot.* 15-19. As a result, DCC entered into the Agreement with WRN Media Limited ("WRN Hong Kong"), a subsidiary of WRN organized under the laws of Hong Kong. *See Mot.* 2:19-22.

In addition to its written terms, the Agreement allegedly also included a series of oral agreements requiring WRN or WRN Hong Kong to (1) establish a European entity to obtain a satellite broadcast license for DCC, (2) actually obtain that license, and (3) assure compliance

JS - 6

O

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

| Case No. | CV 10-5088 PSG (SHx) | Date | September 27, 2010 |
|---|---|---|---|
| Title | Democracy Council of California v. WRN Limited, PLC, *et al*. | | |

with all relevant laws when acquiring the license. *See Compl.* ¶ 9; *Opp'n* 4:7-14. In consideration for the terms of the Agreement, DCC was required to pay an installation fee of 5,000 Euros, a deposit of three months' monthly fees totaling 137,700 Euros, and regular monthly fees of 45,900 Euros beginning on November 1, 2008. *Opp'n* 4:16-20. Shortly after the Agreement was signed, DCC sought to delay the launch of its broadcasts and the parties agreed to an Amendment to the Service Order Form ("the Amendment") suspending services between December 2008 and February 2009. *Id.* 5:11-16.

According to Plaintiff, WRN and WRN Hong Kong (collectively, "Defendants") breached the oral and written terms of the Agreement and the Amendment. On July 19, 2010, DCC filed suit in the Los Angeles Superior Court asserting four causes of action: (1) breach of contract; (2) rescission; (3) fraud; and (4) declaratory relief. The case was timely removed to this Court and Defendants filed a motion to dismiss for, *inter alia*, improper venue under Federal Rule of Civil Procedure 12(b)(3).[1] The argument that venue in this district is improper is based on the alleged existence of a forum selection clause in the Agreement and Amendment making Hong Kong the proper venue.

II.     Legal Standard

A motion to dismiss based on the presence of a forum selection clause is treated as a Federal Rule of Civil Procedure 12(b)(3) motion to dismiss for improper venue. *Argueta v. Banco Mexicano, S.A.*, 87 F.3d 320, 324 (9th Cir. 1996). Under Rule 12(b)(3), a court need not accept the pleadings as true and "may consider facts outside of the pleadings." *See id.*; *Richardson v. Lloyd's of London*, 135 F.3d 1289, 1292 (9th Cir. 1998). But the significant impact of granting a 12(b)(3) motion requires that the trial court "draw all reasonable inferences in favor of the non-moving party and resolve all factual-conflicts in favor of the non-moving party." *Murphy v. Schneider Nat'l, Inc.*, 362 F.3d 1133, 1138-39 (9th Cir. 2003).

III.    Discussion

Defendants' argument that venue in this forum is improper is based on the validity of the forum selection clause in the Agreement. *Mot.* 9:15-18. Plaintiff opposes Defendants' motion

---

[1] The Defendants also argue that Plaintiff's claims should be dismissed based on Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim, or, alternatively, that the Court should stay the action until the parallel action in Hong Kong is resolved. Because the Court's ruling on venue is dispositive, it does not address Plaintiff's alternative arguments.

JS - 6

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 10-5088 PSG (SHx) | Date | September 27, 2010 |
|---|---|---|---|
| Title | Democracy Council of California v. WRN Limited, PLC, *et al*. | | |

and argues that the forum selection clause was never a part of the Agreement between the parties and, alternatively, that even if it is a part of the agreement, enforcement of the clause would be unreasonable. *Opp'n* 11-13, 15:19.

> A. <u>The Existence of the Forum Selection Clause in the Agreement</u>

Before a court can address the reasonableness of a forum selection clause in an international agreement, the clause must be shown to be part of a valid contract. *See Trans-Tec Asia v. M/V Harmony Container*, 518 F.3d 1120, 1124 (9th Cir. 2008). In this case, the existence of a valid forum selection clause in the Agreement is contested between the parties. *See Mot.* 1:25-2:3; *Opp'n* 5:23-25. To fully understand the parties' positions requires a more detailed look at what was, or was not, agreed to.

On October 27, 2008, DCC and WRN Hong Kong signed a "Service Order Form," which is the agreement that requires WRN Hong Kong to provide satellite uplink of a television channel for DCC in exchange for certain fees. *See Yu Decl.*, Ex. A (Service Order Form). There is no dispute that the Service Order Form itself does not include a specific forum selection clause. What the Service Order Form does contain, however, is a statement referring to the "General Terms and Conditions," which includes the forum selection clause at issue in this case. *See Yu Decl.*, Ex. A. Specifically, the first paragraph of the Service Order Form states:

> [DCC] acknowledges that the provision of the Services is subject to and shall be in accordance with the "General Terms and Conditions" attached to this Service Order Form. Capitalized terms not defined herein shall have the meaning assigned to them in the "General Terms and Conditions."

*Yu Decl.*, Ex. A. The General Terms and Conditions includes both an integration clause and a governing law and jurisdiction clause. The integration clause affirms that "[t]he Agreement constitutes the entire Agreement between the Parties with regard to the Services, and supersedes and cancels all previous written and oral representations, agreements and statements of any kind regarding the Services." *Yu Decl.*, Ex. A ¶ 14. In addition, the governing law and jurisdiction clause states that "[t]he Agreement is governed by, and shall be construed in accordance with the laws of Hong Kong," and that "any dispute not resolved amicably between the Parties may be referred to the competent court in Hong Kong, which shall have sole and exclusive jurisdiction thereof." *Yu Decl.*, Ex. A ¶ 16.

JS - 6

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 10-5088 PSG (SHx) | Date | September 27, 2010 |
|---|---|---|---|
| Title | Democracy Council of California v. WRN Limited, PLC, *et al*. | | |

      While the Service Order Form, which refers to the General Terms and Conditions, was signed by both parties, the General Terms and Conditions was never initialed in the spaces provided. *See Yu Decl.*, Ex. A. Plaintiff insists that despite signing the Service Order Form, it never assented to the General Terms and Conditions, making the forum selection and choice of law provisions unenforceable. *See Opp'n* 1:15-16. Defendants contend that Plaintiff agreed to the General Terms and Conditions and its forum selection clause by signing the Service Order Form. *See Mot.* 10:14-16. In order to determine which party is correct, the Court must first determine what law applies to the formation of the Agreement.

      The reasonableness and enforceability of a forum selection clause in an international agreement is governed by federal law because it is a question of federal venue. *See Manetti-Farrow, Inc. v. Gucci America, Inc.*, 858 F.2d 509, 513 (9th Cir. 1988). The *formation of the contract* with the forum selection clause, however, is not governed by federal law, but by state contract law principles. *See Tra Industries, Inc. v. Valspar Corp.*, CV 10-026 JLQ, 2010 WL 2854251, at *3 (E.D. Wash. July 19, 2010). Federal courts must apply the choice-of-law rules of the forum state, meaning California's choice-of-law rules apply in this case. *See Fields v. Legacy Health Sys.*, 413 F.3d 943, 950 (9th Cir. 2005). In California, those rules require that a contract be interpreted "according to the law and usage of the place where it is to be performed; or, if it does not indicate a place of performance, according to the law and usage of the place where it is made." Cal. Civil Code § 1646. The contract for satellite uplink services has no specific place of performance identified, so the Court looks to where it was made. In this case, the Agreement was "formed and negotiated" in California.[2] *See Opp'n* 12:9-11. As a result, California law governs the formation of this contract and provides an answer to the question of whether the forum selection clause is validly part of the Agreement.

      The Court first agrees with Defendants' contention that the Service Order Form and the General Terms and Conditions are not two separate agreements but only separate parts of the same contract. *See Cohen Supp. Decl.* ¶ 34. The Service Order Form clearly states that it is subject to the attached General Terms and Conditions, and the General Terms and Conditions similarly states that it applies to the attached Service Order Form. *See Yu Decl.*, Ex. A. Furthermore, it would be difficult to understand or assign meaning to the Service Order Form without looking to the General Terms and Conditions because basic terms like "Agreement," "Monthly Fee," "Satellite" and even "Party [or] Parties" are defined only in the General Terms and Conditions. *See Yu Decl.*, Ex. A. However, even if the two are considered separate

---

[2] It is uncontested that the Agreement was formed and negotiated in California.

JS - 6

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 10-5088 PSG (SHx) | Date | September 27, 2010 |
|---|---|---|---|
| Title | Democracy Council of California v. WRN Limited, PLC, *et al*. | | |

contracts, as DCC would have the Court do, the outcome is the same under California's incorporation by reference doctrine.

Under California law, "[f]or the terms of another document to be incorporated into the document executed by the parties the reference must be clear and unequivocal, the reference must be called to the attention of the other party and he must consent thereto, and the terms of the incorporated document must be known or easily available to the contract parties." *Troyk v. Farmers Group, Inc.*, 171 Cal. App. 4th 1305, 1331, 90 Cal. Rptr. 3d 589 (2009). The reference here was clear and unequivocal—the Service Order Form explicitly stated that it is "subject to and shall be in accordance with the General Terms and Conditions." *Yu Decl.*, Ex. A. The reference was consented to after being called to the attention of DCC—DCC signed the Service Order Form after discussing the General Terms and Conditions and the forum selection clause with Defendants. *See Prince Decl.*, Exs. B, H; *Millar Decl.*, Ex. C. In addition, the parties signed the Amendment to the Service Order Form in December 2008, which again referred, by name, to the General Terms and Conditions. *See Prince Decl.*, Ex. K. And, the terms of the incorporated document were known and easily available to the parties—the General Terms and Conditions was a document attached to e-mails between the parties leading up to the signing of the Service Order Form. *See e.g.*, *Prince Decl.*, Ex. B.

DCC insists that one e-mail between WRN and DCC establishes that there was no agreement to the General Terms and Conditions and the forum selection clause. On October 19, 2008, DCC's counsel discussed modifying various terms in the General Terms and Conditions with WRN over e-mail. *See Millar Decl.*, Ex. C. In that exchange, DCC's counsel said that it needed time to give the forum selection clause "some thought." *Id.* WRN responded "okay." *Id.* Plaintiff would have the Court believe that this e-mail shows that there was never any agreement to the General Terms and Conditions. *Opp'n* 5:16-20. Looking at the exchange for what it is, however, shows just the opposite. DCC signed the Service Order Form incorporating the General Terms and Conditions eight days after this e-mail exchange. This suggests that DCC gave the forum selection clause "some thought" and then signed the integrated Service Order Form. DCC's act of crossing out certain terms on the Service Order Form and not crossing out the term referring to the General Terms and Conditions only supports Defendant's argument that the forum selection clause is valid and enforceable. *See Yu Decl.*, Ex. A (showing crossed out terms).

DCC's October 27-28, 2008 e-mail chain indicating that DCC would sign the Service Order Form "while we work on the GT&C [General Terms and Conditions]" does not change the Court's analysis. *See Prince Decl.*, Ex. H. As mentioned, the parties signed the Service

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 10-5088 PSG (SHx) | Date | September 27, 2010 |
|---|---|---|---|
| Title | Democracy Council of California v. WRN Limited, PLC, *et al*. | | |

Order Form on October 27, 2008. The only items listed in the October 27-28 e-mail that specifically needed "work" were General Terms and Conditions 4.9 and 8.3.1, and not the forum selection clause. *See Prince Decl.*, Ex. H. Given DCC's signature on the Service Order Form and DCC's failure to modify the clause incorporating the General Terms and Conditions, there is no reason for this Court to doubt that the parties agreed to the General Terms and Conditions and that any changes would be made as authorized amendments. Moreover, DCC's assent to the December 12, 2008 Amendment—also incorporating the General Terms and Conditions—supports the Court's conclusion. *See Cohen Decl.*, Ex. A (the Amendment to the Service Order Form).[3]

Despite Plaintiff's arguments, the General Terms and Conditions, and the forum selection clause contained therein, is a part of the parties' agreement.

      B.      <u>The Reasonableness of the Forum Selection Provision</u>

Having established that the forum selection provision is a valid term of the Agreement between the parties, the next question is whether it is reasonable and enforceable.

"In the light of present-day commercial realities and expanding international trade[,] . . . [a] forum [selection] clause should control absent a strong showing that it should be set aside." *Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 10, 92 S. Ct. 1907 (1972). In fact, forum selection clauses in international agreements are "*prima facie* valid and should not be set aside unless the party challenging the enforcement of such a provision can show it is 'unreasonable' under the circumstances." *Argueta v. Banco Mexicano*, 87 F.3d 320, 325 (9th Cir. 1996). Reasonableness is defined narrowly in this context and a forum selection clause is unreasonable only if:

> (1) its incorporation into the contract was a result of fraud, undue influence, or overweening bargaining power . . . (2) the selected forum is so gravely difficult and inconvenient that the complaining party will for all practical purposes be deprived of its day in court . . . or (3) enforcement of the clause would contravene a strong public policy of the forum in which the suit is brought.

---

[3] The Court notes that DCC did follow the requirements of the General Terms and Conditions when seeking the December 12, 2008 Amendment to the Service Order Form. *See Yu Decl.*, Ex. A ¶ 14.2 (requirements for amendments to the Agreement).

Case 2:10-cv-05088-PSG-SH Document 23 Filed 09/27/10 Page 7 of 9 Page ID #:568

JS - 6

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 10-5088 PSG (SHx) | Date | September 27, 2010 |
|---|---|---|---|
| Title | Democracy Council of California v. WRN Limited, PLC, *et al*. | | |

*Id.* (explaining the *Bremen* exceptions). The burden is on the party challenging a forum selection clause to present persuasive evidence as to its validity. *Pelleport Investors, Inc. v. Budco Quality Theatres, Inc.*, 741 F.2d 273, 280 (9th Cir. 1984) (cited by *Tra Industries, Inc.*, 2010 WL 2854251, at *3).

Plaintiff argues that the forum selection clause exists only because of Defendants' fraud and that litigating the issues in Hong Kong would effectively deprive it of its day in court. *See Opp'n* 16:-17:23.

### 1. Fraud, Undue Influence or Overweening Bargaining Power

First, DCC alleges that Defendants "lured [it] into believing that it was executing only the Service Order Form and, and that the General Terms were not yet agreed to by the parties." Although DCC relates its fraud argument to the forum selection clause, it is really only an argument that the transaction itself was fraudulent. But allegations of a fraudulent transaction are not sufficient to make a forum selection clause unreasonable. In fact, the Supreme Court requires a showing that the forum-selection clause *itself* was included as a "product of fraud or coercion." *Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 519 n.14, 94 S. Ct. 2449, 41 L. Ed. 2d 270 (1974). The parties discussed the specific provisions of the General Terms and Conditions on multiple occasions, and the only evidence presented as to a dispute about the forum selection clause is one e-mail where DCC indicated that it needed to "give [the] jurisdiction issue some thought." *Millar Decl.*, Ex. C. No other mention of the forum selection clause was made and the parties later signed the Service Order Form and the Amendment, both of which referred to and incorporated the General Terms and Conditions. *See Yu Decl.*, Ex. A; *Cohen Decl.*, Ex. A. Finally, the Court notes that there is no evidence of undue influence or unequal bargaining power regarding the forum selection clause. In fact, DCC had the ability to physically change the terms of the contract and still have those terms agreed to. *See Yu Decl.*, Ex. A (changing the operative length of the agreement from three years to two years with no similar alteration of the General Terms clause). DCC's general fraud allegation is not sufficient to nullify the forum selection clause and there is no evidence that the forum selection clause itself was inserted into the Agreement as a result of fraud, undue influence or overweening bargaining power.

### 2. DCC's "Day in Court"

Second, Plaintiff's argument that litigating the case in Hong Kong would effectively deprive it of a "day in court" is equally unavailing. Litigation in Hong Kong started in September 2009 when WRN Hong Kong sued to recover money owed under the Agreement.

Case 2:10-cv-05088-PSG-SH Document 23 Filed 09/27/10 Page 8 of 9 Page ID #:569

JS - 6

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 10-5088 PSG (SHx) | Date | September 27, 2010 |
|---|---|---|---|
| Title | Democracy Council of California v. WRN Limited, PLC, *et al*. | | |

*See Mot.* 6:14-17. The litigation is ongoing and DCC retained counsel to represent it in that forum. *Id.* 6:19-22. Despite hiring counsel in Hong Kong, DCC now argues that all its funds are "earmarked" for other purposes, that it doesn't have the "budget to litigat[e] in Hong Kong," and that the expense "would be prohibitive." *Opp'n* 17:5-9. The Supreme Court and the Ninth Circuit, however, require more than "some inconvenience." *Murphy v. Schneider Nat'l, Inc.*, 362 F.3d 1133, 1142 (9th Cir. 2004). In *Murphy*, the party challenging the forum selection clause submitted evidence of "financial inability, and a disability that would prevent" access to the forum. *Id.* DCC has presented no such evidence and the argument that its money is earmarked for other purposes, or that it plans on spending the money elsewhere, does not clear the high bar set by the Supreme Court and Ninth Circuit to disregard a forum selection provision.[4] Moreover, venue in Hong Kong is not "gravely difficult and inconvenient" merely because it is Hong Kong and not the United States. *See Capri Trading Corp. v. Bank Bumiputra Malaysia Berhad*, 812 F. Supp. 1041, 1044 (N.D. Cal. 1993) (Hong Kong an adequate forum for purposes of *forum non conveniens*); *see also Fireman's Fund Ins. Co. v. M.V. DSR Atlantic*, 131 F.3d 1336 (9th Cir. 1997) (requiring litigation in Korea).

        3.      <u>Strong Public Policy</u>

Finally, DCC makes no arguments and presents no evidence of any strong public policy that would mandate that this litigation proceed in California. DCC's only argument seemingly related to the public policy prong of the analysis is that DCC, as a tax-exempt organization, is prohibited from submitting itself to a jurisdiction of another nation without prior approval of the federal government. *See Opp'n* 16:25-28. DCC, however, has presented no evidence of those restrictions, and even if those restrictions are applicable, DCC still entered into the Agreement with Defendants and agreed to litigate claims in Hong Kong. As the Supreme Court noted, "[t]here are compelling reasons why a freely negotiated private international agreement . . . should be given full effect," and in the absence of any evidence of a compelling public policy in this forum, the parties' agreement remains in force. *See Bremen*, 407 U.S. at 12-14.

---

[4] In response to Defendants' alternative argument that the litigation in this Court should be stayed pending resolution of the case in Hong Kong, Plaintiff argues that the Hong Kong form is inconvenient because "[m]ost of the witnesses . . . live in Los Angeles; the contracts were negotiated and executed in Los Angeles; and the documentary evidence is in Los Angeles and Europe." *See Opp'n* 19:13-16. As established, however, "some inconvenience" is not enough to disregard a forum selection clause and the evidence presented thus far establishes nothing more than "some inconvenience." *See Murphy*, 362 F.3d at 1142.

JS - 6

O

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES - GENERAL

| Case No. | CV 10-5088 PSG (SHx) | Date | September 27, 2010 |
|---|---|---|---|
| Title | Democracy Council of California v. WRN Limited, PLC, *et al*. | | |

      DCC had the burden to establish that the forum selection clause in this case is unreasonable. Without presenting any viable argument as to the existence of fraud or undue influence, the inability to have a fair "day in court" in Hong Kong, or a compelling policy for keeping this case in California, DCC is bound by the Agreement and must litigate this case in Hong Kong.

IV.    Conclusion

      Based on the foregoing, the United States District Court for the Central District of California is an improper venue for this litigation and the case is DISMISSED pursuant to Federal Rule of Procedure 12(b)(3).

      **IT IS SO ORDERED.**